# Original Vienna Bakery, Coffee and Natatorium Co. et al. v. Heissler et al.

1. RECEIVERS—*For What Purpose Appointed.*—Courts do not appoint receivers as a punishment for past dereliction; nor because of past dangers. They are appointed because of present conditions and well founded apprehensions as to the future. They are appointed to protect and preserve the property under consideration.

2. RECEIVERS—*When One Will Not be Appointed.*—Past conduct and past conditions may be taken into consideration in determining what the present situation is and the future will be, but a receiver will not be appointed because of things done or attempted at a past time, when the present situation and the prospects for the future are not such as to warrant taking the control of the property out of the hands of its owners.

3. RECEIVERS—*Taking Property out of the Possession of a Corporation.*—Courts proceed with caution in the appointment of receivers to take the property of a corporation out of the control of its officers, and are much more readily moved to restrain the doing of improper acts and compel the recognition of undoubted rights.

4. RECEIVERS—*For a Solvent Corporation.*—In passing upon the question of the appointment of a receiver for a solvent, prosperous and actually going corporation, the circumstances to justify such appointment must be extraordinary, and something more must be shown than past misconduct and a mere apprehension, based thereon, of future misdoing.

5. STOCKHOLDERS—*Right to Examine Books.*—Parties are entitled at all reasonable times and in a reasonable manner to inspect the books of a company in which they are stockholders, but if by it denied, such denial will not afford a sufficient reason for the appointment of a receiver. By other and appropriate orders the court will, if need be, in an appropriate proceeding, enforce such right.

**Memorandum.**—In chancery. In the Circuit Court of Cook County. Appeal from an order appointing a receiver. Heard in this court at the March term, A. D. 1893. Reversed and remanded with directions. Opinion filed September 8, 1893.

The opinion states the case.

A. H. LOEB, appellants' attorney.

REUBENS & MOTT, appellees' attorneys.

OPINION OF THE COURT, WATERMAN, J.

This case is an appeal from an order appointing a re-

Vienna Bakery Co. v. Heissler.

ceiver for the appellant company. The bill under which such order was made, set forth that the complainants were owners of 100 shares of the stock of the Vienna Bakery Company, for which they had paid the par value thereof, viz., ten thousand dollars; that William Loeb, the president of said company, has caused and is causing false entries to be made in the books of account of said company of the amount of cash received, and has caused to be entered and is daily causing to be entered a less amount of cash as having been received than is actually received, and has taken and is taking the difference himself, without entering any account or memorandum thereof on the books of account of said company; that the money so abstracted and not entered upon the books of said company amounts to from four to five hundred dollars daily; that the said company is doing a lucrative and profitable business, and that the books of said company will so show if all the money received by said company were properly entered upon the books of account thereof; but that by reason of the abstracting of money or for other reasons, which orators have been unable to ascertain, numerous debts due and payable from said company are left unpaid, and especially debts due and owing to the contractors and builders who erected the building of said company at the World's Fair, and said company is threatened with suits and the possible winding up of its affairs by reason of such non-payment; that upon application duly made the said company has refused and does refuse the complainants an opportunity to examine the books thereof; that said Original Bakery, Coffee and Natatorium Company of Chicago was organized for the express purpose of conducting a cafe or restaurant and place of amusement on the Midway Plaisance at the World's Columbian Exposition, and that it has no other business whatsoever; that in order to locate and establish its plant on said Midway Plaisance a contract was entered into between the World's Columbian Exposition and the party procuring the concession, whereby there should be paid to the World's Columbian Exposition twenty-five per cent of the receipts from the restaurant busi-

ness, and that said Original Vienna Bakery, Coffee and Nat-
atorium Company in obtaining an assignment to it of said
commission undertook to make the payments to the World's
Columbian Exposition specified and required in the con-
tract granting said concession—that in case of the violation
of the terms of said contract the World's Columbian Ex-
position has the power to withdraw said concession, and abso-
lutely prevent and prohibit the holder thereof from longer
enjoying any rights and privileges therein and thereby
conferred, and said World's Columbian Exposition could
compel the said Vienna Bakery, Coffee and Natatorium Com-
pany to close up its said place of business on Midway Plai-
sance and absolutely prevent it from continuing in that or
any other business within the inclosure of said World's
Fair.                                  .                    .

That said Original Vienna Bakery, Coffee and Natatorium
Company has invested large sums of money in the erection
of its said building and plant on said Midway Plaisance,
and that its only hope of being able to pay for the said
building and plant and make any return upon the capital
invested therein lies in its being permitted to continue its
said business under the said concession until the closing of
the World's Columbian Exposition; and that in case it should
violate the contract granting said concession, and the
World's Columbian Exposition should act upon such viola-
tion in accordance with its rights and powers, great loss and
damage would result to all the stockholders of said Orig-
inal Vienna Bakery, Coffee and Natatorium Company; that
said plant of said company so erected as aforesaid on Mid-
way Plaisance, would be and is of no value to said com-
pany in case it should not be permitted to conduct its said
business there; that said World's Columbian Exposition
Company, in order to protect its interests in the receipts of
said Bakery, Coffee and Natatorium Company, established a
system whereby checks to be used in said restaurant were
sold to the waiters in said restaurant by a cashier located in
said restaurant by said World's Columbian Exposition Com-
pany; that said Loeb, the president of said Bakery, Coffee

and Natatorium Company, soon after the opening of said restaurant devised a scheme whereby all the checks so turned over by the waiters for deposit in said box were not so deposited, but that the same were again sold by the cashier of the Bakery, Coffee and Natatorium Company to the waiters; that by this means checks were used a number of times, and the World's Columbian Exposition Company were defrauded of the amount represented by the face value of said checks upon every successive use thereof; and that the cash received by said Bakery, Coffee and Natatorium Company, represented by such successive use of said checks, has not been and is not entered upon the books of account of said company, but that the same has been and is abstracted by the said Loeb; that in case the World's Columbian Exposition shall discover the fraud perpetrated upon it by the officers and directors of the said Original Vienna Bakery, Coffee and Natatorium Company, it will be within the power of said exposition company to absolutely close up the said Bakery, Coffee and Natatorium Company's business on said Midway Plaisance, and prevent said company from hereafter doing or transacting any business of any kind whatever thereat; that the building and plant of said company will be absolutely worthless, and a total loss to said company and its stockholders in case said company shall not be permitted to continue conducting said business, and that the amount invested by orators and the entire profits of said enterprise, are being jeopardized daily by the action of said Loeb and his associates, as officers and directors of said Bakery, Coffee and Natatorium Company; that orators will sustain a total loss on account thereof, in case said Loeb and directors be permitted to continue abstracting money in the manner hereinbefore set forth and violating said contract for the concession to conduct said cafe and restaurant on the World's Fair grounds as aforesaid; that orators believe that the only way in which their interests and the interests of the other stockholders of said Bakery, Coffee and Natatorium Company can be protected and secured is by the appointment of a receiver to take charge of said business, and

either continue the same or wind the same up under the direction of this court, as to the court may seem for the best interests of all parties concerned.

The bill was afterward amended by adding thereto the allegation that the five directors of the company control a majority of its stock; that three of them have known of the said conduct of Wm. Loeb for a long time; that a fourth director has recently been informed thereof; that no steps have been taken in respect thereto, but at a meeting of the directors called upon information had of the intended filing of complainants' bill, it was decided to take no action in respect to the matter; that complainants can not obtain any relief at the hands of the directors of said company, they having sanctioned the refusal to permit complainants to examine the books of the company, and refused to order an investigation of the charges made by complainants, and that said directors are not the proper parties with whom to leave the management of the business of said company.

Affidavits in support of the allegations of the bill, made by certain former employes of the company, and by others, were read to the court upon the hearing of the motion for the appointment of a receiver.

The bill was answered by the defendants thereto, the Bakery Company, William Loeb and S. D. Wyatt. These answers, under oath, deny that Loeb or any other officer " have " entered or caused to be entered or are now causing daily to be entered a less amount of cash as having been received than is actually received, and also deny that Loeb or any other officer " have " taken or are now taking the difference himself or themselves, or without entering any account or memorandum thereof on the books of account of the company, and generally deny the material allegations of improper conduct on the part of Loeb and other officers of the company, and also deny that there is any danger of a declaration of forfeiture of its concession from the exposition company, and deny that the Bakery Company has pressing debts or is threatened with suits by creditors.

It is urged that these answers are not sufficiently explicit;

that after the original bill was filed the defendants caused a pencil memorandum to be made upon the books of the company, showing that $28,000 had been received by the company, of which no entry had previously been made upon its books, and that the answers relate to the time when this was done.

The bookkeeper of the company made affidavit that after the filing of complainants' bill, such pencil entries were made of cash received and not before entered.

The answers may be open to some criticism; they do not specifically answer all the details of the alleged fraudulent transactions as set forth in the affidavits filed in support of the application for a receiver; these affidavits are said by counsel for appellees to have been filed six days prior to the filing of the answers. It does not appear that the defendants were aware at the time their answers were filed that any such affidavits had been filed by the complainants; while the record fails to show that any of the affidavits were ever filed, they appear to have been read to and considered by the court below.

The defendants read affidavits showing that subsequent to the filing of the bill a meeting of stockholders of the company was held, at which $174,000 out of the entire $200,000 of the stock was represented.

At this meeting Messrs. G. Emmel, W. E. Pavey and M. Fichtenberg were appointed a committee to investigate the charges made by the complainants and to examine the books and financial condition of the company, whereupon the meeting adjourned to the next day; that the next day this committee reported to the adjourned meeting; whereupon, upon motion of Mr. J. Woolner, it was unanimously

*Resolved*, that the stockholders present at this meeting hereby express our belief that the entire receipts of this company, since it commenced business, as shown by the books of the company, have been duly and properly accounted for by the officers and directors of this company. Be it further

*Resolved*, that the stockholders present willingly express

confidence in the management and directory of the company."

Neither of the officers of said meeting, and none of the committee appointed by it, were officers or directors of the Bakery Company, nor was the mover of the resolutions there adopted, nor does it appear that any of them were in any way under the control of any of such officers or directors.

Whatever view may be taken of the conduct of the president and directors of the Bakery Company prior to the filing of appellees' bill, whether the president did or did not, for the purpose of defrauding the Exposition Company, or for any other purpose, intentionally fail to have entered upon the books of the Bakery Company, cash receipts to the amount of $28,000. There is no sufficient reason for thinking that at the time the order appointing a receiver was made any cash received had not then been entered, or that the books of the company did not then show its true condition, nor was there any sufficient reason for apprehending that the right to carry on its business within the Exposition grounds would be taken away, or that thereafter true and full accounts of all its transactions would not be kept, or was in danger of being defrauded by its officers or closed up by suits of creditors against it.

Courts do not appoint receivers as a punishment for past dereliction, nor because of past dangers. Receivers are appointed because of present conditions and well founded apprehensions as to the future.

Past conduct and past conditions may be taken into consideration in determining what the present situation is and the future will be, but a receiver will not be appointed because of things done or attempted at a past time, when the present situation and the prospects for the future are not such as to warrant taking the control of the property out of the hands of its owners. Kean v. Colt, 1 Halst. Let. 365; Beecher v. Bininger, 1 Blatchf. 170; High on Receivers, Sec. 11; Bank v. Gage, 79 Ill. 207.

Receivers are appointed to protect and preserve the property under consideration. High on Receivers, Secs. 1, 3, 5, 6, 11; Baker v. Admr. of Backus, 32 Ill. 79.

Courts proceed with extreme caution in the appointment of receivers to take the property of a corporation out of the control of its officers, and are much more readily moved too, by proper orders, restrain the doing of improper acts and compel the recognition of undoubted rights.    High on Receivers, Sec. 289; Oakley v. Paterson Bank, 1 Green's Ch. 173; Beach on Private Corporations, Vol. 2, Sec. 910; Spelling on Private Corporations, Sec. 852; Morawetz on Private Corporations, Sec. 281; Hyde Park Gas Co. v. Kerber, 5 Brad. 132.

We do not mean to hold that in no case will a receiver be appointed for a solvent, prosperous and actually going corporation, but the circumstances to justify such appointment must be extraordinary, and something more must be shown than past misconduct and a mere apprehension, based thereon, of future misdoing.    Waterbury v. M. U. Ex. Co., 50 Barb. (N. Y.) 157.

None of the officers or directors of this company are shown to be insolvent, and while it is true that appellees ought not and can not be made to participate in a fraud upon the Exposition Company, we see no reason for thinking that whatever may have been contemplated in the past, there is any reason now to apprehend that the full amount due to the Exposition Company will not be accounted for and turned over, or that true and complete books of account will not be kept.

Appellees are entitled at all reasonable times and in a reasonable manner to inspect the books of the company in which they are stockholders, and this right appellants concede, but if by them denied, such denial would not afford a sufficient reason for the appointment of a receiver; by other appropriate orders the court will, if need be, in an appropriate proceeding, enforce such right.

The order appointing a receiver will be reversed.    The Circuit Court will require the receiver to account, and will make such orders in respect to such accounting and the restoration of the property in his possession to the appellant corporation, not inconsistent with this opinion, as the justice of the case may require.