[926 NE2d 1202, 900 NYS2d 698]

Hotel 71 Mezz Lender LLC, Appellant, v Robert D. Falor et al., Respondents, et al., Defendant.

Argued January 6, 2010; decided February 16, 2010

## POINTS OF COUNSEL

*Gibson, Dunn & Crutcher LLP,* New York City (*Robert L. Wei-gel* of counsel), for appellant. I. The trial court's order of attachment was proper. (*National Broadway Bank v Sampson,* 179 NY 213; *Cotnareanu v National City Bank,* 271 NY 619; *Bank of China, N.Y. Branch v NBM L.L.C.,* 192 F Supp 2d 183; *Harris v Balk,* 198 US 215; *Morgan v Mutual Benefit Life Ins. Co.,* 189 NY 447; *Plimpton v Bigelow,* 93 NY 592; *Breezevale Ltd. v Dickinson,* 262 AD2d 248; *Perez v Chase Manhattan Bank,* 61 NY2d 460; *Severnoe Sec. Corp. v London & Lancashire Ins. Co.,* 255 NY 120; *ABKCO Indus. v Apple Films,* 39 NY2d 670.) II. The

trial court's appointment of Albert M. Rosenblatt as the post-judgment receiver was proper under CPLR 5228. (*Smith v Meader Pen Corp.*, 255 App Div 397; *Aquavella v Equivision, Inc.*, 181 Misc 2d 322, 270 AD2d 972; *Udel v Udel*, 82 Misc 2d 882; *Matter of Myer*, 273 App Div 387; *Matter of Chlopecki v Chlopecki*, 296 AD2d 640; *Fitzgerald v Tamola*, 199 AD2d 122; *Noce v Kaufman*, 2 NY2d 347; *Old Republic Natl. Tit. Ins. Co. v Cardinal Abstract Corp.*, 14 AD3d 678; *ABKCO Indus. v Apple Films*, 39 NY2d 670; *Acken v Coughlin*, 103 App Div 1.)

*Mitchell Silberberg & Knupp LLP*, New York City (*Paul D. Montclare* of counsel), for respondent. I. The court below lacked jurisdiction to attach defendants' interests in out-of-state entities. (*National Broadway Bank v Sampson*, 179 NY 213; *Gryphon Dom. VI, LLC v APP Intl. Fin. Co., B.V.*, 41 AD3d 25; *Koehler v Bank of Bermuda Ltd.*, 12 NY3d 533; *Matter of National Union Fire Ins. Co. of Pittsburgh, Pa. v Advanced Empl. Concepts*, 269 AD2d 101; *Sweeney, Cohn, Stahl & Vaccaro v Kane*, 6 AD3d 72; *Oliner v Canadian Pac. Ry. Co.*, 34 AD2d 310, 27 NY2d 988; *Holmes v Camp*, 219 NY 359; *Bischoff v Boar's Head Provisions Co., Inc.*, 436 F Supp 2d 626; *Weber v King*, 110 F Supp 2d 124; *Harris v Balk*, 198 US 215.) II. The court improperly attached properties held as tenancies by the entirety in violation of Florida law. III. The court improperly attached properties in which none of defendants hold a direct interest. (*Capital Ventures Intl. v Republic of Argentina*, 443 F3d 214; *Bass v Bass*, 140 AD2d 251; *Viggiano v Viggiano*, 136 AD2d 630.) IV. New York courts may not appoint a receiver to run out-of-state companies. (*Acken v Coughlin*, 103 App Div 1; *Harbor Footwear Group v ASA Trading*, 1 Misc 3d 911[A], 2004 NY Slip Op 50036[U]; *Hallenborg v Greene*, 66 App Div 590; *Matter of Burge [Oceanic Trading Co.]*, 282 App Div 219; *Gryphon Dom. VI, LLC v APP Intl. Fin. Co., B.V.*, 41 AD3d 25.) V. There is no basis to appoint a receiver over respondent's management rights in foreign companies. (*Retropolis, Inc. v 14th St. Dev. LLC*, 17 AD3d 209.) VI. There is no jurisdiction to appoint a receiver over out-of-state assets. (*Acken v Coughlin*, 103 App Div 1; *Harris v Balk*, 198 US 215; *National Broadway Bank v Sampson*, 179 NY 213; *Sweeney, Cohn, Stahl & Vaccaro v Kane*, 6 AD3d 72; *Bischoff v Boar's Head Provisions Co., Inc.*, 436 F Supp 2d 626.) VII. The court below disregarded Florida law in appointing a receiver over interests held by husband and wife as tenants by the entirety. (*Hallenborg v Greene*, 66 App Div 590.) VIII. The court below abused its discretion in appointing a receiver. (*Rosen v Siegel*, 106 F3d 28; *Secured Capital*

*Corp. of N.Y. v Dansker,* 263 AD2d 503; *Matter of Chlopecki v Chlopecki,* 296 AD2d 640.)

## OPINION OF THE COURT

JONES, J.

The primary issue before the Court is whether the intangible personal property plaintiff sought to attach, i.e., defendants' ownership/membership interests in various out-of-state business entities, was subject to attachment under CPLR article 62. We conclude that the issuance of an order of attachment in New York on defendant Guy T. Mitchell, the nondomiciliary garnishee of defendants' intangible personal property, who voluntarily submitted to personal jurisdiction in New York, was appropriate.

We further hold that Supreme Court did not abuse its discretion in appointing a receiver pursuant to CPLR 5228.

By agreement dated March 29, 2005, plaintiff Hotel 71 Mezz Lender LLC made a $27,338,801 mezzanine loan to nonparty Chicago H & S Senior Investors, LLC (borrower) for the purpose of developing and renovating Hotel 71, a prominent hotel located in Chicago.[1] This loan was made by plaintiff and accepted by the borrower in New York. Further, the proceeds of this loan were disbursed from New York. On that same day, defendants, including Guy T. Mitchell, who do not reside in New York, executed a guaranty of payment (guaranty) under which they unconditionally agreed to be jointly and severally liable for the borrower's obligations under the loan and submitted to the jurisdiction of any federal or state court in New York City in any suit, action or proceeding arising out of or relating to the guaranty. By executing this guaranty, defendants waived all defenses and counterclaims that might have been asserted against plaintiff in the event the borrower defaulted on the loan. In addition to being negotiated in New York, the guaranty was to be governed by and construed in accordance with the laws of New York State.

The borrower thereafter defaulted on the loan and filed for bankruptcy protection. On April 9, 2007, plaintiff commenced this action against the guarantors in Supreme Court, New York County to enforce the guaranty and recover the amounts due

---

1. In general, a mezzanine loan, which is subordinate to some other obligation (akin to a second mortgage), is secured not by the real property itself, but by stock of or some ownership interest in the company that owns the real property.

under the loan. After defendants answered, plaintiff made an ex parte application, pursuant to CPLR 6201, for a prejudgment order of attachment.[2] Plaintiff sought to attach defendants' property interests as security for the collection of any judgment entered against defendants. On September 25, 2007, Supreme Court granted the order of attachment in the sum of $65,149,926 (the amount secured by the order). The court, however, stayed service of the levy by the sheriff to afford defendants the opportunity to oppose plaintiff's application for an order of attachment. In early October 2007, the order of attachment was delivered to the sheriff of the City and State of New York.

On October 23, 2007, Supreme Court heard oral argument from counsel regarding the order of attachment. Defendant Mitchell, who had been deposed in Supreme Court that day, was present to oppose the order. Following the hearing, Supreme Court permitted the sheriff to serve the order of attachment upon defendant Mitchell personally, as garnishee for any ownership/membership interests defendants may have had in 23 out-of-state entities, and as the apparent manager of the entities.[3]

The property at issue consisted of defendants' interests in 22 limited liability companies formed in Delaware, Georgia and Florida and a Florida corporation solely owned by defendant Mitchell. Unlike stock certificates, which are tangible property, defendants' ownership/membership interests are intangible and *uncertificated*.

After Supreme Court sealed the record, defendant Mitchell, pursuant to CPLR 6219, provided plaintiff with garnishee statements for the 23 entities. Defendant Mitchell does not dispute that he is the "proper garnishee" (within CPLR 5201 [c] [1])

---

2. Under CPLR 6201 (1),
    "[a]n order of attachment may be granted in any action . . . where the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a money judgment against one or more defendants, when . . . the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state."

Here, the requirements of CPLR 6201 (1) have been met. Defendants are nondomiciliaries residing outside the state. Further, under the plain terms of the aforementioned guaranty, plaintiff is entitled to full repayment of the loan from the guarantors (defendants) in the form of a money judgment.

3. The sheriff actually levied upon defendants' interests in 24 out-of-state entities. However, defendant Mitchell asserted he had no affiliation with and no information about one of the entities.

for defendants' ownership/membership interests.[4] Nor does defendant Mitchell argue that he was improperly served. Defendant Mitchell, through counsel, stated in a letter to Supreme Court dated January 28, 2008, "[w]e are prepared to waive any argument that the proper garnishee was not served with the order of attachment or the related levies in this case."

In separate orders to show cause, plaintiff moved to confirm the order of attachment in the sum of $65,149,926, and for the appointment of a receiver due to defendants' alleged refusal to produce documents related to their finances and their refusal to attend duly noticed depositions. By order entered February 8, 2008, Supreme Court granted plaintiff's motion to confirm the order of attachment, finding that plaintiff made the necessary showing under CPLR 6212 to confirm attachment[5] and that attachment was necessary in the aid of security. Further, the court ruled that defendants' intangible interests were attachable property under the CPLR and that, because those interests were not evidenced by certificates, the service of the levy on defendant Mitchell was sufficient to fix the situs of said property in New York. Two months later, Supreme Court issued an order stating, "[c]onditioned upon the entry of judgment, . . . [plaintiff's] motion for the appointment of a receiver [of defendants' ownership/membership interests in 23 out-of-state entities] is granted." As set forth in this order, the receiver is authorized to take such actions as are appropriate to satisfy the order of attachment and any judgment(s) entered against defendants.

On February 6, 2008 and April 22, 2008, Supreme Court granted plaintiff summary judgment on liability against six of

---

4. CPLR 5201 (c) (1) provides:
   "Where property consists of a right or share in the stock of an association or corporation, or interests or profits therein, for which a certificate of stock or other negotiable instrument is not outstanding, the corporation, or the president or treasurer of the association on behalf of the association, shall be the garnishee."
"A 'garnishee' is a person who owes a debt to a judgment debtor, or a person other than the judgment debtor who has property in his possession or custody in which a judgment debtor has an interest" (CPLR 105 [i]).

5. CPLR 6212 (a) provides:
   "On a motion for an order of attachment, or for an order to confirm an order of attachment, the plaintiff shall show, by affidavit and such other written evidence as may be submitted, that there is a cause of action, that it is probable that the plaintiff will succeed on the merits, that one or more grounds for attachment provided in section 6201 exist, and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff."

the defendants, including defendant Mitchell. On April 21, 2008, judgment in the amount of $52,404,066.54 was entered against these defendants. To date, the judgment has not been satisfied.

The Appellate Division reversed in a 3-1 decision, holding that because Supreme Court lacked jurisdiction over the defendants' interests in the limited liability companies and other entity, that court erred in granting plaintiff's motion to confirm the order of attachment. Citing *National Broadway Bank v Sampson* (179 NY 213 [1904]), the Appellate Division majority stated, "an attachment of a debt or other intangible property can only be effected as against the debtor or obligor by service upon him or her when he or she is domiciled within the state" (58 AD3d 270, 273 [2008]). Thus, because defendant Mitchell was only temporarily in New York when he was served, his presence was insufficient to support the attachment. The majority also concluded that Supreme Court abused its discretion in appointing a receiver.

In concluding that Supreme Court's orders should be affirmed, the dissent argued, based on the statutory framework of CPLR article 62 and *Harris v Balk* (198 US 215 [1905]), that service on a proper garnishee while that individual is in New York—even temporarily—is enough to permit the attachment of an intangible asset. The dissent also concluded, given defendants' alleged conduct in refusing to produce documents and appear for depositions, that Supreme Court was warranted in appointing a receiver to aid in postjudgment enforcement. The Appellate Division granted plaintiff leave to appeal, and we now reverse.

Plaintiff argues that Supreme Court's order of attachment was proper in all respects. Defendants counter that Supreme Court lacked jurisdiction over the ownership interests plaintiff sought to attach because they were not located in New York and, thus, could not be properly attached. Accordingly, defendants conclude, Supreme Court erred in granting plaintiff's motion to confirm the order of attachment. We find defendants' arguments unpersuasive.

The provisional remedy of attachment, which is governed by CPLR article 62, operates only against the property of the defendant, not on his/her person. One purpose of attachment is to provide security for a potential judgment against a nonresident debtor. This Court recently stated:

"By means of attachment, a creditor effects the

prejudgment seizure of a debtor's property, to be held by the sheriff[, actually or constructively], so as to apply the property to the creditor's judgment if the creditor should prevail in court. Attachment simply keeps the debtor away from his property or, at least, the free use thereof; it does not transfer the property to the creditor. It is frequently used when the creditor suspects that the debtor is secreting property or removing it from New York and/or when the creditor is unable to serve the debtor, despite diligent efforts, even though the debtor would be within the personal jurisdiction of a New York court (*see* CPLR 6201)" (*Koehler v Bank of Bermuda Ltd.*, 12 NY3d 533, 538 [2009]; *see* Siegel, NY Prac § 313, at 499 [4th ed]).

Although attachment always serves a security function, it can also be used to obtain "quasi in rem" jurisdiction over a defendant not amenable to personal jurisdiction, but with tangible or intangible property in the state (*see id.*; *Douglass v Phenix Ins. Co. of Brooklyn, N. Y.*, 138 NY 209, 219 [1893] ["(I)t is a fundamental rule that in attachment proceedings the *res* must be within the jurisdiction of the court issuing the process, in order to confer jurisdiction"]).[6] "This quasi in rem jurisdiction is subject to the due process restrictions outlined by the United States Supreme Court in *Shaffer v Heitner* (433 US 186 [1977];[7] *see generally* Siegel, NY Prac §§ 104, 313, 314 [4th ed])" (*Koehler*, 12 NY3d at 538). In short, when attachment is used to serve as a jurisdictional predicate, the following black letter principle must be adhered to: "where personal jurisdiction is lacking, a New York court cannot attach property not within its jurisdiction" (*id.*).

---

6. Under the doctrine of quasi in rem jurisdiction, plaintiff is allowed "to attach any property [defendant] happens to have in New York and use it as a jurisdictional basis. Even if [defendant] is then served outside New York and defaults, the doctrine assures [plaintiff] that a resulting judgment will be good at least to the extent of the seized property" (Siegel, NY Prac § 104, at 184 [4th ed]).

7. The *Shaffer* Court considered whether the use of prejudgment garnishment against a nonresident debtor, based on the presence of the debtor's property in the garnishor's state, was, in and of itself, sufficient to confer in rem jurisdiction over the debtor. The Court held that, absent a showing that the debtor had "minimum contacts" with the garnishor's chosen forum state, the mere presence of the debtor's property was insufficient to confer jurisdiction (*see* 433 US at 208-209).

On the other hand, where a court acquires jurisdiction over the person of one who owns or controls property, it is equally well settled that "the court[ ] can compel observance of its decrees by proceedings *in personam* against the owner within the jurisdiction" (*id.* at 539). In the case at bar, defendants (the guarantors of the debt under the mezzanine loan) voluntarily submitted to the personal jurisdiction of the court by executing the personal guaranty. This is not a case where attachment was used to confer quasi in rem jurisdiction over a nondomiciliary based on his/her in-state property. This attachment only served a security function (to ensure there would be sufficient money to satisfy a judgment if plaintiff prevailed).

■ Based on the foregoing, a court with personal jurisdiction over a nondomiciliary present in New York has jurisdiction over that individual's tangible or intangible property, even if the situs of the property is outside New York (*cf. Koehler*, 12 NY3d at 539).[8] Because personal jurisdiction was properly asserted over defendants, including defendant Mitchell, Supreme Court had the authority to order prejudgment attachment of the property defendant Mitchell owned and/or controlled, and service of the order upon him while he was in New York was appropriate.

We next consider whether the property sought to be attached was subject to article 62 of the CPLR and relevant case law. CPLR 6202 provides:

> "Any debt or property against which a money judgment may be enforced as provided in section 5201 is subject to attachment. The proper garnishee of any such property or debt is the person designated in section 5201; for the purpose of applying the provisions to attachment, references to a 'judgment debtor' in section 5201 and in subdivision (i) of section 105 shall be construed to mean 'defendant.' "

Under CPLR 5201 (b), "[a] money judgment may be enforced

---

8. In *Koehler*, a case involving a certified question from the United States Court of Appeals for the Second Circuit, this Court held that a New York court with personal jurisdiction over a garnishee bank could order the bank to turn over stock certificates located outside New York. In reaching this conclusion, the Court relied, in part, on Appellate Division precedent holding that if a court has jurisdiction over a judgment debtor's person, it can order delivery of the property the debtor controls, whether located within or without the state (*see Gryphon Dom. VI, LLC v APP Intl. Fin. Co., B.V.*, 41 AD3d 25 [1st Dept 2007], *lv denied* 10 NY3d 705 [2008]; *Miller v Doniger*, 28 AD3d 405 [1st Dept 2006]; *Starbare II Partners v Sloan*, 216 AD2d 238 [1st Dept 1995]).

against any property which could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested." Subdivision (b) "authorizes a judgment creditor to reach for any property interest the judgment debtor may have, whether [real or personal,] tangible or intangible, 'which could be assigned or transferred' " (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5201:9, at 67). As relevant here,

> "[i]ntangible interests, including money belonging to or owed to the judgment debtor, are subject to levy and are infinite in their variety. Some of these incorporeal interests have economic value so real and so direct that a judgment creditor would prefer them to any kind of tangible property. Others are more remote and take greater effort to reduce to money. Others are so contingent that they may never amount to a thing and hence not even be worth an effort" (Siegel, NY Prac § 487, at 823 [4th ed]).

In our seminal decision *ABKCO Indus. v Apple Films* (39 NY2d 670 [1976]), this Court considered whether an absent debtor's intangible contract right to net profits from the future promotion of a film was "debt" or "property" within CPLR 5201, so as to support an attachment for purposes of securing quasi in rem jurisdiction. Although we stated that this right could be treated either as a debt under CPLR 5201 (a) or as property under CPLR 5201 (b), we held that the contract right was property that could be assigned, and therefore attached, even though its value was uncertain. In so holding, we determined that the lack of specific value had "no legal effect on the validity of the attachment" (39 NY2d at 675). Instead, the operative fact was whether the property interest had potential economic value that was worthy of pursuit by the creditor (*see id.*; Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5201:5, at 60-64). In embracing this practical approach, *ABKCO Indus.* found unnecessary the distinction between "debt" and "property" for purposes of CPLR 5201 (*see Alliance Bond Fund, Inc. v Grupo Mexicano De Desarrollo, S.A.*, 190 F3d 16, 23 [2d Cir 1999] ["*ABKCO (Indus.)* virtually erases the distinction in § 5201 between 'debt' and 'property' by recharacterizing—as '(p)roperty against which a money judgment may be enforced'—debts that otherwise are placed out of reach by § 5201 (a)'s requirement that the debt being pursued be

either past due or certain to become due upon demand"]; *see also Gryphon Dom. VI, LLC v APP Intl. Fin. Co., B.V.,* 41 AD3d 25, 36 [1st Dept 2007]).

■ Applying a similar analysis in this case, the intangible property plaintiff sought to attach—defendants' ownership/membership interests in 22 out-of-state limited liability companies—is akin to intangible contract rights, and is clearly assignable and transferable. Thus, the interests in question are "property" for purposes of CPLR 6202.

We next address whether the property at issue has a New York situs. At the outset, we acknowledge that "[t]he CPLR contains no provision as to the situs of [intangible] property for attachment purposes" (*ABKCO Indus.,* 39 NY2d at 675). We have therefore commented that "[t]he situs of intangibles is in truth a legal fiction" (*Severnoe Sec. Corp. v London & Lancashire Ins. Co.,* 255 NY 120, 123 [1931]). Here, the intangible interests sought to be attached are not evidenced by written instruments, such as certificates or negotiable instruments. If these interests were so evidenced, their situs would be where the written instruments were physically present (*see ABKCO Indus.,* 39 NY2d at 675). Because defendants' intangible interests are uncertificated, we look to the U.S. Supreme Court's decision in *Harris v Balk* (198 US 215 [1905]) for guidance in resolving the "situs" question.

In *Harris,* the United States Supreme Court held that a Maryland creditor who had a money claim against a North Carolina debtor could attach a debt owed by a North Carolina garnishee to the debtor by serving an order of attachment on the garnishee while he was temporarily in Maryland. Insofar as *Harris* stands for the principle that the above service was sufficient to obtain quasi in rem jurisdiction over the garnishee who coincidentally happened to be in the state, this principle has been overruled (*see Shaffer v Heitner,* 433 US 186 [1977]). But *Harris* also sets forth principles to be used to fix the situs of a debt and these principles remain good law (*see Perez v Chase Manhattan Bank,* 61 NY2d 460, 469 n 1 [1984]). Since *Harris,* "the power to enforce or collect a debt has been dependent on the presence of the debtor" (*id.* at 469)—not the domicile of the debtor. In this regard, the *Harris* Court stated:

> "If there be a law of the state providing for the attachment of the debt, then, if the garnishee be found in that state, and process be personally served upon

him therein, we think the court thereby acquires jurisdiction over him, and can garnish the debt due from him to the debtor of the plaintiff, and condemn it, provided the garnishee could himself be sued by his creditor in that state. We do not see how the question of jurisdiction *vel non* can properly be made to depend upon the so-called original situs of the debt, or upon the character of the stay of the garnishee, whether temporary or permanent, in the state where the attachment is issued. Power over the person of the garnishee confers jurisdiction on the courts of the state where the writ issues. If, while temporarily there, his creditor might sue him there and recover the debt, then he is liable to process of garnishment, no matter where the situs of the debt was originally. We do not see the materiality of the expression 'situs of the debt,' when used in connection with attachment proceedings. If by situs is meant the place of the creation of the debt, that fact is immaterial. If it be meant that the obligation to pay the debt can only be enforced at the situs thus fixed, we think it plainly untrue. *The obligation of the debtor to pay his debt clings to and accompanies him wherever he goes*. He is as much bound to pay his debt in a foreign state when therein sued upon his obligation by his creditor, as he was in the state where the debt was contracted" (*Harris*, 198 US at 222-223 [emphasis added and citation omitted]).

In short, under *Harris*, where a creditor seeks to attach a debt (an intangible form of property) solely for security purposes (i.e., the debtor is subject to the court's personal jurisdiction), the situs of the debt is wherever the debtor is present.

◼ Although the property interests at issue here are not debt, it would be illogical for us to hold that *Harris* does not apply to defendants' intangible property interests. As noted, there is no real distinction between "debt" and "property" under CPLR 5201. Further, defendant Mitchell's status supports application of *Harris* to the case at bar. Here, the order of attachment was served on defendant Mitchell, who is both subject to the personal jurisdiction of the court and the proper garnishee of defendants' interests. Just as a debt clings to the debtor when he enters a state other than the state where the debt was incurred, it follows that defendants' uncertificated ownership

interests, which defendant Mitchell possesses or has custody over, travel with him, and were attachable in New York based on his presence in this state. Our conclusion that the situs of defendants' property is in New York finds support among the commentators. Professor David D. Siegel stated:

> "[A]lmost any kind of assignable interest is leviable today if a New York situs can be found for it. Finding the garnishee is just another way of finding the asset's 'situs': if the garnishee has a New York presence, the debtor's asset in the garnishee's hands will usually be found to have a New York situs, too. Where, for example, the garnishee owes the judgment debtor a debt, not represented by a negotiable instrument, the garnishee's physical presence in New York fixes New York as the situs of the debt. Where the asset being pursued is a claim that the judgment debtor has against the garnishee, the garnishee's New York presence enables suit on the claim to be brought in New York and thus, again, gives the claim a New York situs" (Siegel, NY Prac § 491, at 835 [4th ed]; see also ABKCO Indus., 39 NY2d at 675).

Based on the foregoing, the Appellate Division majority's and defendants' reliance on National Broadway Bank v Sampson (179 NY 213 [1904] [held that the situs of intangible property is the domicile of the debtor; as such, a court cannot obtain jurisdiction by service upon a nonresident debtor who is only temporarily present in New York State]) is misplaced. National Broadway Bank's restrictive view regarding the situs of intangible property, as evidenced by its holding that the debtor's domicile serves as the jurisdictional predicate to support an attachment, was overruled in Harris v Balk, and should no longer be cited as authority for determining the situs of intangible property (see Morris Plan Indus. Bank of N.Y. v Gunning, 295 NY 324, 329-330 [1946]). In any event, National Broadway Bank, which was decided over 50 years before the CPLR was enacted, is simply not consonant with CPLR article 62.

Finally, we reject the arguments analogizing defendants' ownership/membership interests in various limited liability companies to shares of corporate stock. Although both represent ownership interests, the relevant dividing line, under the CPLR's attachment provisions, is not ownership versus non-ownership, or whether the interests are tangible or intangible.

It is whether the interests are evidenced by written instruments, such as certificates, or not. Corporate shares are typically evidenced by stock certificates. Defendants' interests, on the other hand, are not evidenced by "ownership" certificates or any other written instrument.

■ Plaintiff next argues that Supreme Court properly exercised its discretion in appointing a receiver pursuant to CPLR 5228. We agree.

"Upon motion of a judgment creditor . . . the court may appoint a receiver who may be authorized to administer, collect, improve, lease, repair or sell any real or personal property in which the judgment debtor has an interest or to do any other acts designed to satisfy the judgment" (CPLR 5228 [a]; *see Matter of Chlopecki v Chlopecki*, 296 AD2d 640, 641 [3d Dept 2002]). The appointment of a receiver pursuant to section 5228 (a) is a matter within the court's discretion (*see Drucker v Drucker*, 53 Misc 2d 446, 448 [Sup Ct, Special Term, Queens County 1967]). A motion to appoint a receiver should only be "granted . . . when a special reason appears to justify one" (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5228:1, at 324). In deciding whether the appointment of receiver is justified, courts have considered the "(1) alternative remedies available to the creditor . . . ; (2) the degree to which receivership will increase the likelihood of satisfaction . . . ; and (3) the risk of fraud or insolvency if a receiver is not appointed" (*United States v Zitron*, 1990 WL 13278, *1, 1990 US Dist LEXIS 1049, *2 [SD NY, Feb. 2, 1990] [citations omitted]). "A receivership has been held especially appropriate when the property interest involved is intangible, lacks a ready market, and presents nothing that a sheriff can work with at an auction, such as the interest of a psychiatrist/judgment debtor in a professional corporation of which he is a member" (Siegel, NY Prac § 512, at 872 [4th ed]; *see Udel v Udel*, 82 Misc 2d 882 [NY City Civ Ct 1975]).

Here, plaintiff argues that the appointment of a receiver is warranted due to the complexity of defendants' intangible ownership interests in various limited liability companies and defendants' disregard for Supreme Court's discovery orders (with respect to their finances). Also, there appears to be a danger of insolvency if a receiver is not appointed. Supreme Court noted that plaintiff submitted "extensive documentation that strongly suggests Defendants' precarious financial condition, and that an identifiable risk exists that Defendants will be

unable to satisfy a future judgment." Further, given the lack of marketability of defendants' intangible property interests (there is no ready market for them), turning the property over to the sheriff would not be helpful in trying to satisfy the judgment. A receiver has the authority to marshal and, if necessary, liquidate defendants' interests. Finally, contrary to defendants' arguments, plaintiff seeks receivership over defendants' ownership/membership interests, not the day-to-day operation of a foreign corporation.

Based on the foregoing, Supreme Court did not abuse its discretion in appointing a postjudgment receiver to administer defendants' intangible personal property for purposes of satisfying plaintiff's outstanding $52 million judgment.

Accordingly, the order of the Appellate Division, insofar as appealed from, should be reversed, with costs, the orders of Supreme Court reinstated, and the certified question answered in the negative.

Judges CIPARICK, GRAFFEO, READ, SMITH and PIGOTT concur; Chief Judge LIPPMAN taking no part.

Order, insofar as appealed from, reversed, etc.