OPINION OF THE COURT
Jeffrey S. Brown, J.
Plaintiff moves for an order pursuant to CPLR 5225 directing defendant James Alcus to execute and deliver all documents necessary to draw down the maximum amount of credit available on his two credit card credit line accounts with HSBC Bank and pay the same to the plaintiff.
On May 15, 2014, a clerk’s judgment was entered in the amount of $841,644.99 against defendants Alcus Fuel Oil and Sons, Inc. and James Alcus. Pursuant to an information subpoena, HSBC identified two credit card accounts in the name of James Alcus. Account xxxxxx3874 has a credit line of $10,250 with a balance of $0 and account xxxxxx3339 has a credit line of $8,000 with a balance of $0.
Plaintiff contends that defendant James Alcus has intangible rights pursuant to CPLR 5201 under his credit line agreement with HSBC Bank. Counsel argues that James Alcus has the right to withdraw cash from these credit cards and deliver it to a third person.
Counsel for defendants argues that nowhere in the CPLR is a court authorized to order a judgment debtor to draw down on a credit line because the debtor has the right to draw cash on his credit cards.
In reply, counsel for plaintiff argues that the defendant has an interest in that asset or if the asset is within the debtor’s control, it may be turned over. It is enough that the debtor derives a benefit from the asset. The credit cards are property of the defendant pursuant to CPLR 5201 and may be turned over to the creditor in payment of the judgment pursuant to CPLR 5225.
CPLR 5225 (a) provides in relevant part that
“where it is shown that the judgment debtor is in possession or custody of money or other personal *728 property in which he has an interest, the court shall order that the judgment debtor pay the money, or so much of it as sufficient to satisfy the judgment, to the judgment creditor.”
In this case the judgment debtor is not in possession or custody of money, rather he is alleged to be in possession of credit cards from which he has the right to draw cash up to the credit line. CPLR 5201 (b) provides in relevant part that “[a] money judgment may be enforced against any property which could be assigned or transferred, whether it consists of a present or future right . . . and whether or not it is vested, unless it is exempt from application to the satisfaction of the judgment . . . .” CPLR 6202 provides that “[a]ny debt or property against which a money judgment may be enforced as provided in section 5201 is subject to attachment.”
Pursuant to CPLR 5201 (b), a money judgment can only be enforced against that property, tangible or intangible, which can be assigned or transferred. Thus, only those property interests of the judgment debtor which by law the debtor may assign or transfer may be sought for application to the judgment. (Alliance Bond Fund, Inc. v Grupo Mexicano De Desarrollo, S.A., 190 F3d 16 [2d Cir 1999]; Heller v Frota Oceanica E Amazonica, S.A., 81 AD3d 894 [2d Dept 2011].) Further, the plaintiff is required to demonstrate that a credit card line of credit is assignable or transferrable property (id.).
The Court of Appeals in Simpson v Loehmann (21 NY2d 305, 315 [1967]) provided a guideline for the courts to determine whether certain types of property are subject to attachment.
“True, these contemporary statutes are designed to reach every kind of marketable and assignable property, and every kind of right that is reducible to marketable or assignable economic value. They refer to debts and property, and in the case of causes of action they must be assignable. But they are not intended or designed to reach every obligation created by contract, however inchoate, conditional, contingent, or personal. . . The statutes, in making intangible assets leviable and attachable, are not intended to reach the intangible right as such but instead to reach the tangibles that eventually must result from the intangible right. Thus, at the very least, before any intangible right has practical significance as an asset to be levied upon or attached, it must give promise of being translatable into an *729 economically valuable tangible, usually cash. The instances are easiest for application of the statutes when, unlike here, the intangible right is marketable or assignable.” (Id.)
Before this court is an application by the judgment creditor to compel the judgment debtor to take a cash advance from his credit cards in order to partially satisfy a money judgment.
“As relevant here,
“ ‘[i]ntangible interests, including money belonging to or owed to the judgment debtor, are subject to levy and are infinite in their variety. Some of these incorporeal interests have economic value so real and so direct that a judgment creditor would prefer them to any kind of tangible property. Others are more remote and take greater effort to reduce to money. Others are so contingent that they may never amount to a thing and hence not even be worth an effort’ (Siegel, NY Prac § 487, at 823 [4th ed]).
“In our seminal decision ABKCO Indus. v Apple Films (39 NY2d 670 [1976]), this Court considered whether an absent debtor’s intangible contract right to net profits from the future promotion of a film was ‘debt’ or ‘property’ within CPLR 5201, so as to support an attachment for purposes of securing quasi in rem jurisdiction. Although we stated that this right could be treated either as a debt under CPLR 5201 (a) or as property under CPLR 5201 (b), we held that the contract right was property that could be assigned, and therefore attached, even though its value was uncertain. In so holding, we determined that the lack of specific value had ‘no legal effect on the validity of the attachment’ (39 NY2d at 675). Instead, the operative fact was whether the property interest had potential economic value that was worthy of pursuit by the creditor (see id.\ Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C5201:5, at 60-64). In embracing this practical approach, ABKCO Indus, found unnecessary the distinction between ‘debt’ and ‘property’ for purposes of CPLR 5201 (see Alliance Bond Fund, Inc. v Grupo Mexicano De Desarrollo, S.A., 190 F3d 16, 23 [2d Cir 1999] [‘ABKCO (Indus.) virtually erases the distinction in § 5201 between “debt” and “property” by *730 re-characterizing—as “(p)roperty against which a money judgment may be enforced”—debts that otherwise are placed out of reach by § 5201 (a)’s requirement that the debt being pursued be either past due or certain to become due upon demand’]; see also Gryphon Dom. VI, LLC v APP Intl. Fin. Co., B.V., 41 AD3d 25, 36 [1st Dept 2007]).
“Applying a similar analysis in this case, the intangible property plaintiff sought to attach—defendants’ ownership/membership interests in 22 out-of-state limited liability companies—is akin to intangible contract rights, and is clearly assignable and transferable. Thus, the interests in question are ‘property’ for purposes of CPLR 6202.” (Hotel 71 Mezz Lender LLC v Falor, 14 NY3d 303, 312-314 [2010].)
In the instant case, plaintiff fails to establish documentation or legal authority that a credit card line of credit is assignable or transferable property, which defendant can be compelled to use to satisfy the subject judgment pursuant to article 52 of the CPLR (see Heller v Frota Oceanica E Amazonica, S.A., 81 AD3d 894 [2011], supra). Determining otherwise would create an additional creditor for defendants, with little likelihood of repayment to the credit card company, who had no relationship or interest in the instant matter.
Accordingly, plaintiffs motion is denied.
All applications not specifically addressed herein are denied.