■ JSC VTB BANK, Appellant-Respondent, v IGOR MAVLYANOV et al., Respondents-Appellants, et al., Defendants. [63 NYS3d 40]—

Order, Supreme Court, New York County (Anil C. Singh, J.), entered June 9, 2017, which, to the extent appealed from, granted plaintiff's motion for an attachment and preliminary injunction, fixed the undertaking at $25 million, and denied defendants Ilio Mavlyanov (Ilio), Stella Mavlyanova (Stella), Hanan Mavlyanov (Hanan), 18016 Boris Properties LLC (Boris LLC), 2710 Bowman LLC (Bowman LLC), 364 West 119th Street Realty LLC (119th St. LLC), and Jasper Venture Group

LLC's cross motion to dismiss the complaint as against Boris LLC and Bowman LLC and to dismiss all claims related to real estate located in California pursuant to CPLR 3211 (a) (4), unanimously modified, on the law and the facts and in the exercise of discretion, to deny plaintiff's motion for a preliminary injunction, vacate the attachment of the California properties, 364 West 119th Street, and the house located in Fresh Meadows, Queens, reduce the undertaking to $1 million, direct that the temporary restraining order issued on May 10, 2016 be dissolved unless plaintiff posts the undertaking within 30 days after entry of this order, and grant the cross motion to the extent of staying all claims relating to the California properties pending the California action, and otherwise affirmed, without costs.

Although plaintiff failed to submit an affidavit in its motion, the court was permitted to consider the affirmation by counsel, which, although not made on personal knowledge, attached documentary exhibits (*Wimbledon Fin. Master Fund, Ltd. v Bergstein*, 147 AD3d 644 [1st Dept 2017]).

Nevertheless, on the merits, the court should not have granted a preliminary injunction, because the primary relief sought in this action is money damages (*Credit Agricole Indosuez v Rossiyskiy Kredit Bank*, 94 NY2d 541, 548 [2000]). Plaintiff has no specific right to the properties at issue; it seeks to enjoin defendants from transferring, encumbering, or otherwise disposing of their properties so that it will be able to satisfy the judgments it obtained in Russia on defendant Igor Mavlyanov's (Igor) guaranties.

Even if this were an appropriate case for an injunction, the injunction should not be granted, because the fact that plaintiff can be fully compensated by damages shows that he would not suffer irreparable injury absent the injunction (*see e.g. Somers Assoc. v Corvino*, 156 AD2d 218 [1st Dept 1989]; *Scotto v Mei*, 219 AD2d 181, 184 [1st Dept 1996]).

The court should not have ordered attachment of real estate located in California, i.e., outside its jurisdiction (*see Matter of National Union Fire Ins. Co. of Pittsburgh, Pa. v Advanced Empl. Concepts*, 269 AD2d 101 [1st Dept 2000]; *see also Gryphon Dom. VI, LLC v APP Intl. Fin. Co., B.V.*, 41 AD3d 25, 31 [1st Dept 2007], *lv denied* 10 NY3d 705 [2008]). *Hotel 71 Mezz Lender LLC v Falor* (14 NY3d 303, 312 [2010]) is distinguishable. It involved uncertificated ownership/membership interests in limited liability companies and a corporation, which could be attached by serving the manager of the entities in New York (*see id.* at 308). By contrast, a sheriff levies on

real property "by filing with the clerk of the county in which the property is located a notice of attachment" (CPLR 6216).

Even if a New York court could attach real estate located in California, we would stay all claims related to the California properties, because, only about a month after plaintiff sued here, it brought an action in that state against many of the same defendants as in the case at bar, alleging fraudulent conveyance with respect to the California properties. The California action "offers more" than the case at bar (*see Continental Ins. Co. v Polaris Indus. Partners*, 199 AD2d 222, 223 [1st Dept 1993]), because, as plaintiff admits, a notice of pendency against the California properties can be filed only in that state, not here. It also appears that the California action will go to trial before the case at bar (*see e.g. Belopolsky v Renew Data Corp.*, 41 AD3d 322, 323 [1st Dept 2007]).

With respect to the New York properties, plaintiff failed to show that Igor intended to defraud it when he and Stella gave their former marital home in Fresh Meadows to their son Hanan incident to their divorce. This transfer occurred in December 2013, at a time when Igor's company, Yashma Trade and Production Company OJSC, was repaying plaintiff's loans in full and on time. Hence, it cannot be inferred that, at the time of the transfer, Igor knew of his inability to pay plaintiff's claim (*see Wall St. Assoc. v Brodsky*, 257 AD2d 526, 529 [1st Dept 1999]). It is sheer speculation that, in December 2013, Igor foresaw that Russia would invade Crimea in 2014 and would be sanctioned as a result and that the Russian economy would collapse in 2015 due to the sanctions, causing Yashma to default on its loans (*see Rosenthal v Rochester Button Co.*, 148 AD2d 375, 376 [1st Dept 1989]).

By contrast, Igor gave nonparty Ilio Trans, Inc. to Hanan in April 2015, after the Russian ruble collapsed in 2014 and after plaintiff increased the interest rate on its loans to Yashma from 11.5% to 24.33% (in the case of the July 2013 loan) and 18.96% (in the case of the Oct. 2013 loan). Thus, by April 2015, Igor may very well have known of his inability to pay plaintiff's claim. Moreover, other "badges of fraud" are present, such as "a close relationship between the parties to the alleged fraudulent transaction" (*see Wall St.*, 257 AD2d at 529), zero consideration, and possible "retention of control of the property by the transferor after the conveyance" (*id.*), because Igor was still listed in New York State Department of State records as Ilio Trans's CEO as of July 22, 2016.

The initial transactions involving 364 West 119th Street bear no badges of fraud: 119th St. LLC, which was then owned by

defendant Pyotr Yadgarov, contracted to buy the property from nonparty New York State Office of General Services on June 19, 2013, and the transaction closed on January 13, 2014. Both of those dates precede the economic problems in Russia. Ilio bought 119th St. LLC from Yadgarov, in exchange for assuming the LLC's debts, on April 1, 2015—i.e., after problems had begun to surface. However, plaintiff is not a creditor of Yadgarov, the transferor (see CPLR 6201 [3] [attachment available if "the defendant, with intent to defraud his creditors . . . , has . . . disposed of . . . property"]; *Wall St.*, 257 AD2d at 529 [badges of fraud include "the transferor's knowledge of the creditor's claim and the inability to pay it"]), and plaintiff does not allege that Ilio (the debtor) and Yadgarov (the transferor) are alter egos.

Because the only attachment we are upholding is Ilio Trans, we reduce the amount of the undertaking to $1 million. A $1 million valuation of that corporation is supported by objective evidence; indeed, even plaintiff assigns it that value. Hanan's assertions that the value of Ilio Trans, which owns two taxi medallions, is declining due to competition from Uber and Lyft and that he cannot sell the corporation due to the attachment are credible, and plaintiff offered no evidence to the contrary.

Competition will probably not reduce the value of Ilio Trans to zero, but, since CPLR 6212 (b) allows for the recovery of attorneys' fees if an attachment is found to be unwarranted, $1 million is "rationally related to the potential damages in the event the [attachment] is found to have been unwarranted" (*Medical Bldgs. Assoc., Inc. v Abner Props. Co.*, 103 AD3d 488, 488 [1st Dept 2013]).

The order on appeal says that the TRO issued on May 10, 2016, which did not require plaintiff to post an undertaking, "shall be dissolved upon Plaintiff paying the undertaking" for the preliminary injunction. Since plaintiff has not yet paid that undertaking, it has continued to enjoy the benefit of a "temporary" order for more than a year. The TRO has "become[ ], in effect, a preliminary injunction" (*Honeywell, Inc. v Technical Bldg. Servs.*, 103 AD2d 433, 434 n [3d Dept 1984]). Given that we have reduced the undertaking from $25 million to $1 million, we expect plaintiff to post it. If plaintiff does not post the undertaking within 30 days after the date of entry of this order, the TRO granted in May 2016 shall be dissolved. Concur—Richter, J.P., Webber, Kern and Moulton, JJ.