Charles S. Jackson, Individually and as Executor of
and Sole Legatee Under the Last Will of Daniel M.
Jackson, Deceased, Appellee, v. Metropolitan
Funeral System Association et al., Defendants.
Appeal of Metropolitan Funeral System Association,
Appellant.

Gen. No. 36,203.

Heard in the third division of this court for the first district. Opinion filed November 16, 1932.

EDWARD H. MORRIS, for appellant.

CLYDE C. COLWELL and JOHN A. IRRMANN, for appellee.

MR. JUSTICE HEBEL delivered the opinion of the court.

This is an appeal by the Metropolitan Funeral System Association, a corporation, from an interlocutory order entered in the circuit court on July 18, 1932, appointing a receiver for the business of this defendant. The bill of complaint was filed on May 18, 1932. Separate answers were filed by several of the defendants, Metropolitan Funeral System Assn, Robert A. Cole, Ahmed Rayner, and Fred Lewing. No appearance or answer was filed by the defendant Otto A. Stevenson or the Metropolitan Funeral Corporation. The motion for the appointment of a receiver was heard upon the verified bill of complaint and the sworn answers of certain defendants.

Upon an examination of the bill of complaint in this case we find that the complainant is the executor of the

last will and testament of Daniel M. Jackson, who died testate on May 17, 1929, and that he, the complainant, is the sole residuary legatee under the will; that at the time of the death of Daniel M. Jackson, he was the owner of the entire capital stock of Emanuel Jackson & Co., a corporation of Illinois, organized to carry on the business of undertaking, and to render burial services. It also appears that Daniel M. Jackson was a stockholder and the owner of 90 shares of stock of an Illinois corporation known as the Metropolitan Funeral Corporation. The object of this organization was to contract with lodges, societies, associations, and other organizations for furnishing funeral and burial services.

It is also charged that upon the organization of the Metropolitan Funeral Corporation, Daniel M. Jackson, Ahmed A. Rayner and Robert A. Cole, organized a voluntary funeral system or association, had solicitors to secure members, sold policies to individuals, wherein for consideration they agreed that the Metropolitan Funeral Corporation would furnish a funeral and burial service to cost $400. This system, so-called, was continued until the first day of January, 1928, at which time a new form of policy was issued bearing the name Metropolitan Funeral System Association, which company purported to be doing business as a burial society. This association, in consideration of a weekly premium paid to it by the insured, agreed to furnish $400 for the funeral or burial expenses upon the death of the insured, and pay $400 to the Metropolitan Funeral Corporation for such expenses. Emanuel Jackson & Co. was paid $125 by the Metropolitan Funeral Corporation for such services.

The place of business of these companies, systems, and associations was located at 3400 South Michigan avenue, Chicago, Illinois, in property owned by Daniel M. Jackson. On April 1, 1929, Daniel M. Jackson, by

oral agreement, contracted to sell and deliver to Robert A. Cole, for the sum of $154,000, all his right, title and interest in the Metropolitan Funeral Corporation, together with 90 shares of stock of said company, also the premises and the buildings thereon known as 3400 South Michigan avenue, Cook county, Illinois, subject to a mortgage of $45,000, and the property, good will, and stock of Emanuel Jackson & Co., and on April 1, 1929, the said Cole paid to Daniel M. Jackson the sum of $6,000 on account of the above purchase. Afterwards, on April 6, 1929, Robert A. Cole paid to Daniel M. Jackson the further sum of $4,000 on account of the purchase price above mentioned, making a total sum of $10,000 paid to Daniel M. Jackson. On May 17, 1929, before the execution of a formal written contract, Daniel M. Jackson died, and on May 21, 1929, the complainant stated to Cole that he was aware of the terms of the oral agreement between Cole and Daniel M. Jackson, and that the complainant would cause said contract to be carried out in its entirety. After various negotiations were had between the complainant, Cole and others, no written agreement was ever executed. The $10,000 paid to Daniel M. Jackson by Cole was afterwards allowed as a claim in the estate of Daniel M. Jackson, deceased, by the probate court of Cook county. This allowed claim was afterwards paid to Cole.

It further appears from the bill that on the 29th day of April, 1929, at a purported special meeting of the stockholders of the Metropolitan Funeral Corporation, the stockholders by resolution, enlarged the object of the company to permit it to do an undertaking and burial business. It also appears that on November 25, 1929, Robert A. Cole, Fred Lewing and Ahmed A. Rayner, caused to be incorporated the Emanuel Jackson Undertaking Company, to carry on the undertaking business, with a capital stock of $1,000; that on

November 27, 1929, as a part of the transaction, Cole, Lewing and Rayner caused to be filed in the office of the director of trade and commerce of Illinois, a certificate signed by them for the incorporation of the Metropolitan Funeral System Association, with its principal place of business located at 3400 South Michigan avenue, the object of which was to conduct a business of providing burial benefits or awards, and the payment therefor, in whole or in part, for the funeral and burial expenses of the deceased certificate holders or subscribers to this corporation, which corporation was qualified under the Amended Burial Insurance Act of 1929, Cahill's Ill. Rev. St. 1931, ch. 73, ¶¶ 482–487.

It further appears from the bill of complaint that prior to or upon the formation of the Metropolitan Funeral System Association, all the books, records, and assets owned by the Metropolitan Funeral Corporation, Funeral System, an unincorporated association, Emanuel Jackson & Company, a corporation, were turned over to the Metropolitan Funeral System Association, Inc.; that all of the business, assets and employees of the several companies and associations were taken over by the Metropolitan Funeral System Association, Inc. without recompense to these companies, and without notice to the complainant.

It is further charged that in a proceeding in the superior court for that purpose a decree was entered dissolving the Emanuel Jackson Co. for failure to comply with the provisions of the corporation laws of Illinois, which decree was entered on the 10th day of June, 1927, and a certificate of that fact was filed with the secretary of the State of Illinois; that the Metropolitan Funeral Corporation was also dissolved for failure to pay a franchise tax due on July 1, 1931, in a proceeding instituted by the attorney general of the State of Illinois for the purpose of dissolving said corporation, all these acts being for the purpose and

as a part of the scheme of Cole, Lewing and Rayner to deprive the complainant of his rights.

It also appears from a statement in the bill of complaint that the Metropolitan Funeral System Association filed a report of its operation during the year ending December 31, 1931; that the officers of the company, as set forth in this report, are R. A. Cole, president, A. A. Rayner, vice president and treasurer, and Fred Lewing, secretary; that these defendants are also directors of said company. It further appears from the report that on January 1, 1931, there was a certain surplus balance of $26,007.32; that the income of the company for the year 1931 amounted to $408,852.26; that there was paid out during the year for claims paid in cash, costs of funerals, fees paid to or retained by agents, salaries of officers and other expenses in the conduct of the business, the sum of $404,774.47, leaving a surplus balance in the company of $30,085.11; that the amount of money collected weekly by the agents of this association was known as the weekly debit; that on July 1, 1927, this association had a weekly debit of $800; that since that time said debit has grown to $8,000 a week; that in March, 1932, it had about 90 solicitors who confined their efforts entirely to the City of Joliet in Will county, Illinois, and to Cook county, Illinois, and that there are at present about 40,000 policyholders in said company. The policyholders pay from 10 cents to 50 cents a week for each of the several policies issued.

It further appears from the bill that the said Metropolitan Funeral System Association has a lease for the building known as 416–418 East 47th street, Chicago, Illinois, where the business of this association is conducted; that a rental of $750 per month is to be paid for the first five years and $800 per month for the balance of the term of said lease; that the first floor is used as funeral parlors; the second floor for offices of the association, except one room alleged to

be rented to the Fireside Publishing Company, and that $5,000 was deposited with the landlord as a guaranty that said rent would be paid.

It further appears that the certificates issued by this company for funeral benefits amount to $13,850,400.

The criticism in the bill is that the officers were not qualified for the positions for which they held office, and also that no provision was made for the setting aside of a reserve fund for the payment of the benefit certificates issued by the association. There was also a general charge that the business of the association was not properly conducted, and that great losses are likely to result to the complainant and the holders of the certificates in the association unless a receiver is appointed.

To these charges of the complainant, the defendant association, before the court, filed an answer admitting some of the facts, but denying any wrongdoing in the conduct of its business, and questioning the motives of the complainant in the filing of this bill.

This court has examined the bill of complaint, not for the purpose of passing upon the merits, but only to consider the sufficiency of the charges upon which the court entered an order appointing a receiver for its business. At this point it is of interest to note that in the same order appointing a receiver the defendants are restrained from disposing of any property now in its possession belonging to the Metropolitan Funeral System Association and the Metropolitan Funeral Corporation, except in the usual course of business. This defendant makes no objection to the restraining part of the order, but its whole theory is that the chancellor erred in appointing a receiver based upon the charges made in the complainant's bill.

The bill does not charge insolvency, but the complainant contends that he is a creditor, and has a lien upon certain property taken possession of unlawfully

by the defendant, and that the officers of the defendant corporation are guilty of waste, mismanagement and improper conduct in carrying on the business of the association, and that there is grave danger of its not being a solvent going concern. There is no charge in the bill of circumstances so extraordinary in the conduct of this going concern, which is apparently solvent, as to justify the appointment of a receiver. This association has about 40,000 members, according to the bill of complaint, paying collectively large sums of money to this defendant for the purpose for which the corporation was organized.

Under the statute of the State of Illinois, this association is subject to the control of the department of trade and commerce. No charges are made that the defendant is in default in meeting its obligations. The reasonable inference to be drawn from the charges in the bill of complaint is that the defendant has satisfied its obligations, or had done so at least up to the time the bill was filed. The court should act cautiously in appointing a receiver under circumstances such as these, for not only the complainant's rights are to be considered, but also the rights of the policyholders, who upon the payment of the premiums are entitled to receive the services contracted for when they pass on to the great beyond. It seems to this court that the learned chancellor did all that was required when the restraining order was entered, thereby protecting the complainant and restraining the defendant from the disposal of assets, which are the subject of this controversy, until the final disposition of the litigation.

It does not appear from the charges in the bill that the officers or directors of the company are insolvent, and we are unable to draw any inference from the charges that whatever may have been contemplated in the past by the defendants to the bill, there is any reason now to apprehend that this defendant will not

fully account if the complainant is entitled to relief. It is to be noted, too, that the decree dissolving the Emanuel Jackson Co. was entered on the 10th day of June, 1927, during the lifetime of Daniel M. Jackson, for failure to comply with the provisions of the corporation laws of the State of Illinois.

This court in the case of *Original Vienna Bakery, Coffee & Natatorium Co. v. Heissler*, 50 Ill. App. 406, in passing upon the questions involved in the appointment of a receiver, applied certain rules which are pertinent in the instant case, and used the following language:

"Courts do not appoint receivers as a punishment for past dereliction, nor because of past dangers. Receivers are appointed because of present conditions and well founded apprehensions as to the future.

"Past conduct and past conditions may be taken into consideration in determining what the present situation is and the future will be, but a receiver will not be appointed because of things done or attempted at a past time, when the present situation and the prospects for the future are not such as to warrant taking the control of the property out of the hands of its owners. *Kean v. Colt*, 1 Halst. Let. 365; *Beecher v. Bininger*, 1 Blatchf. 170; High on Receivers, Sec. 11; *Bank v. Gage,* 79 Ill. 207.

"Receivers are appointed to protect and preserve the property under consideration. High on Receivers, Secs. 1, 3, 5, 6, 11; *Baker v. Admr. of Backus*, 32 Ill. 79.

"Courts proceed with extreme caution in the appointment of receivers to take the property of a corporation out of the control of its officers, and are much more readily moved to, by proper orders, restrain the doing of improper acts and compel the recognition of undoubted rights. High on Receivers, Sec. 289; *Oakley v. Paterson Bank,* 1 Green's Ch. 173; Beach on

Private Corporations, Vol. 2, Sec. 910; Spelling on Private Corporations, Sec. 852; Morawetz on Private Corporations, Sec. 281; *Hyde Park Gas Co. v. Kerber*, 5 Brad. 132." *Black Diamond Co. v. Waterloo*, 62 Ill. App. 206; *Heitkamp v. American Pigment & Chemical Co.*, 158 Ill. App. 587.

Many questions have been called to our attention, but we consider from the conclusions reached by us upon the charges in the bill of complaint and the law that this order for the appointment of a receiver must be reversed.

*Order reversed.*

Wilson, P. J., and Hall, J., concur.