NOTICE
Decision filed 11/01/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 170260-U

NO. 5-17-0260

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| THERESA A. MENCKOWSKI, | ) | Williamson County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 12-D-75 |
| | ) | |
| JAMES MENCKOWSKI II, | ) | Honorable |
| | ) | John W. Sanders, |
| Respondent-Appellant. | ) | Judge, presiding. |

JUSTICE WHARTON delivered the judgment of the court.
Justices Barberis and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where the trial court's order holding James Menckowski II in indirect civil contempt contained a purge provision that required other parties to participate and facilitate either a refinancing of the mortgage or a purchase of the property, the purge provision must be vacated because James Menckowski II did not have the sole ability to purge his own contempt. Where the purge provision, directing James Menckowski II to pay attorney fees to Theresa Menckowski, was connected to his compliance with "the provision of this order," we must also vacate that portion of the contempt order.

¶ 2    The respondent, James Menckowski II, appeals from the trial court's May 10, 2017, order holding him in indirect civil contempt for failing to refinance the former couple's mobile home and not removing Theresa Menckowski's name from the mortgage.

1

¶ 3                              I. BACKGROUND

¶ 4     Theresa and James were married in 1990 and divorced in 2012. While still married, the

parties filed a Chapter 13 bankruptcy in 2010. The bankruptcy case had not concluded by the date

of the 2012 divorce and was not finalized until November 26, 2013. Provisions of the parties'

agreed-to marital settlement agreement were dependent upon the finalization of the bankruptcy.

The marital settlement agreement contained the following provision:

> "The parties agree that all marital debt is incorporated into the Chapter 13
> bankruptcy and that there are no other joint marital debts. The vehicles will be paid in full
> upon the completion of the bankruptcy, and the Green Tree debt remaining after the
> bankruptcy discharge will be assumed solely by the Respondent [James] and he will hold
> Petitioner [Theresa] harmless from said debt. After completion of the bankruptcy,
> Respondent will make every effort to remove Petitioner's name from the Green Tree debt,
> including the use of co-signers, in order to refinance the debt or remove Petitioner's name
> therefrom."

¶ 5     On July 11, 2016, Theresa filed a petition for rule to show cause stating that James had

willfully failed to comply with the mortgage refinancing provision of the 2012 marital settlement

agreement. Theresa stated that James had been ordered to refinance the mobile home after the

bankruptcy had concluded in late 2013, and that he had "failed to make reasonable efforts to

refinance" the mortgage since that time. On July 14, 2016, the trial court entered its order directing

James to appear in court to show cause why he should not be held in contempt of court.

¶ 6     At the time of the divorce and bankruptcy, the mortgage on the mobile home was held by

Green Tree Servicing, LLC. By July 2016, when Theresa filed her petition for rule to show cause,

the mortgage was held by Ditech Financial LLC.

¶ 7     On March 29, 2017, James filed his response to Theresa's petition. He alleged that he had

tried to refinance the mortgage but had not been successful because of the bankruptcy on his

financial record and because certain lenders would not refinance a used mobile home.

¶ 8    Numerous documents contained in the record on appeal reveal James's unsuccessful attempts to refinance the loan. In late September 2016, James received a letter from Ditech Financial LLC denying his request to assume ownership, which would have removed Theresa's name from the mortgage. The stated reason for the denial was: "Assumptions are not permitted for Manufactured Homes accounts at this time." On September 9, 2016, James received a rejection of his application for a conventional 30-year mortgage with Banterra Bank. Banterra Bank stated that it denied James's application for the following reasons: delinquent past or present credit obligations with others, the bankruptcy filing, the value or type of collateral was insufficient, and other collection actions or judgments. On May 18, 2016, James received a letter from Wells Fargo Financial National Bank denying his application for a Home Projects Visa Credit Card. Key factors that affected his credit score and resulted in the denial of this request were as follows: serious delinquency and public record or collection filed, too few accounts currently paid as agreed, lack of recent revolving account information, lack of recent bank revolving information, and too many inquiries in the last 12 months. On November 24, 2015, First Financial Bank, N.A., rejected James's application for a 15-year mortgage loan. The principal reasons for denying his request were the bankruptcy filing and a collections action or judgment entered against him.

¶ 9    James also attempted to get his current wife to be a co-signer to obtain a new loan for the mobile home. James's current wife refused, but she also alleged that she would not have been successful in obtaining a loan with James as a co-signer because of his bad credit. James also asked his mother to co-sign a loan, but she declined on the advice of counsel.

¶ 10    The record on appeal contains a financial summary of James's payments to Ditech Financial LLC for the mortgage on the mobile home. Beginning in August 2013, James made

3

every mortgage payment. The balance outstanding as of March 9, 2017, the date of the report, was $35,208.

¶ 11 James testified that the mobile home is 17 years old and is currently valued at $18,000 to $20,000. Thus, the amount still owed on the mobile home mortgage is more than the value of the property.

¶ 12 On May 10, 2017, the trial court entered its order finding that James was in indirect civil contempt. The court cited the "make every effort to remove [Theresa's] name from the Green Tree debt, including the use of co-signers" clause of the 2012 marital settlement agreement. The court found that prior to Theresa's July 11, 2016, filing, James had made "little, if any, effort" to secure refinancing. The court found: "All of his efforts to refinance the loan, which all failed, occurred four years after their dissolution of marriage and after Husband was made aware of Wife's Petition for Rule to Show Cause." In finding that James should be held in indirect civil contempt of court, the court concluded that it found James's failure to comply with the court's judgment was willful and without sufficient justification. The trial court provided a means by which James could purge his contempt as follows:

> "i. Husband shall refinance the Green Tree (now Ditech Financial LLC) debt within 30 days. If Husband is unable to refinance the debt, then the mobile home shall be sold within 120 days of this Order at an amount not less than the amount owed to Ditech Financial LLC.
>
> ii. Husband shall pay Wife $852.50 within 30 days as partial reimbursement of her attorney's fees. If Husband fails to pay said amount within 30 days and fails to comply with the provisions of this order, then Husband shall pay Wife $1,280.65 ***."

¶ 13 James filed a motion to reconsider the order of indirect civil contempt on May 25, 2017. He asked the court to set aside its order, stating that the evidence established that his actions in not having Theresa's name removed from the mortgage were not willful, that he had used "every avenue available" to refinance the home, and that he was unable to obtain refinancing because of

4

his credit history and the bankruptcy filing. On June 16, 2017, the trial court denied James's motion to reconsider. The court stated that the exhibits attached to the motion to reconsider outlining the efforts James made to refinance did not constitute "newly discovered evidence" and could have been presented to the court at or before trial.

¶ 14    From these orders, James timely appealed.

¶ 15                                    II. ANALYSIS

¶ 16    James argues that the trial court should not have entered its order holding him in contempt of court. The trial court found James to be in indirect civil contempt for failing to comply with the terms of the marital settlement agreement. The court ordered him to refinance the loan and to pay attorney fees to Theresa within 30 days to purge the contempt.

¶ 17    Civil contempt is coercive in nature and is designed to obtain compliance with the court's order. *In re Marriage of Depew*, 246 Ill. App. 3d 960, 966 (1993). Indirect contempt refers to contempt that occurs outside of the courtroom. *In re Marriage of Charous*, 368 Ill. App. 3d 99, 107 (2006). Civil contempt is not considered a punishment. *Id*. Civil contempt has two fundamental requirements. First, the contemnor must have the ability to do what the court asked, and second, after complying with the order, the trial court cannot impose any further sanctions. *In re Marriage of Sharp*, 369 Ill. App. 3d 271, 279 (2006).

¶ 18    The party seeking the contempt order has the burden to prove that there was an obligation pursuant to a court order and that the alleged contemnor did not comply with the court order. *In re Marriage of Hartian*, 222 Ill. App. 3d 566, 570 (1991). After the moving party makes his *prima facie* case, the burden of proof shifts to the alleged contemnor. *Id*. The alleged contemnor must establish that his noncompliance with the trial court's order was not willful, *i.e.*, that he has

a valid reason for failing to comply with the court's order. *In re Marriage of Tatham*, 293 Ill. App. 3d 471, 480 (1997).

¶ 19    In *In re Marriage of Logston*, 103 Ill. 2d 266, 289 (1984), our supreme court explained:

> "When a party is found in civil contempt of court, *** the contempt order is coercive in nature. The court seeks only to secure obedience to its prior order. Since the contempt order is coercive rather than punitive, the civil contemnor must be provided with the 'keys to his cell.' That is, he must be allowed to purge himself of contempt even after he has been imprisoned."

A valid contempt order must contain a purge provision to lift the sanction upon compliance with the order. *Bank of America, N.A. v. Freed*, 2012 IL App (1st) 113178, ¶ 42. "A civil contempt order that fails to provide the contemnor with the 'keys to his cell' is void." *Id*.

¶ 20    In *Bank of America, N.A. v. Freed*, the court found that the purge provision did not provide the contemnor with the "keys to the cell" because a third party was added to the purge process. *Id.* ¶ 44. To purge the contempt, the defendants in that case had to work with a receiver to identify assets to be applied to pay the judgment. *Id.* In addition, the receiver had to report to the court that the investigation was complete and make a recommendation to the court regarding the collection, sale, and distribution of the defendants' assets. *Id.* "These provisions appear to take the keys out of the defendants' hands and give them to the receiver, for even if defendants cooperate with the receiver, the contempt will not be purged until the receiver determines that his investigation is complete and makes a report and recommendation to the court." *Id.*; see also *In re A.M.*, 2020 IL App (4th) 190645, ¶ 32 (holding that the purge provision was improper because the mother could not purge the contempt without participation and cooperation of the father, and thus the mother's ability to purge her contempt "was not left solely within her own control"); *In re Marriage of Knoll*, 2016 IL App (1st) 152494, ¶ 58 (finding that the purge provision was invalid because the mother could not purge the contempt without the father's participation).

¶ 21    We will not overturn a trial court's finding of contempt unless that finding is contrary to the manifest weight of the evidence. *In re Marriage of Charous*, 368 Ill. App. 3d at 108; *Pryweller v. Pryweller*, 218 Ill. App. 3d 619, 628 (1991).

¶ 22    In this case, the "keys to the cell" were not wholly within James's own hands. The court ordered him to refinance the mortgage within 30 days and if that could not be accomplished, then he must sell the mobile home within 120 days for no less than the amount owed on the mortgage —an amount that was greatly more than the mobile home's value. We believe that James cannot purge the contempt on his own. Whether James could obtain refinancing or find a buyer to pay almost double the value of the mobile home were purge provisions that were not within his own control. To obtain refinancing, a lender would need to review James's finances, the value of the property, and James's credit bureau reports. Before the court found James in contempt, James had already sought refinancing four times. James made one of the four refinancing efforts before Theresa filed her petition for a rule to show cause, contrary to the trial court's assertion in its contempt order. In each case, the lender rejected James's request.

¶ 23    Theresa and James declared bankruptcy and that process was concluded in late 2013. That decision will have financial repercussions for Theresa and James for many years until the bankruptcy falls off the credit reports. In addition to the bankruptcy issue, James had other negative financial concerns reflected in his credit bureau reports, and those concerns were utilized by the financial institutions as bases to deny his refinancing applications.

¶ 24    We conclude that the trial court's purge provision necessarily requires a financial institution to agree to grant James's request for refinancing. Similarly, the alternative option of finding a willing and able buyer to purchase the mobile home for almost double its value is also not within James's sole control. As in *Bank of America, N.A. v. Freed*, the ability to purge the

7

contempt was in the hands of third parties. Without the appropriate purge provision, that portion of the contempt order must be vacated. We also vacate that portion of the contempt order directing James to pay attorney fees to Theresa because the second half of the attorney fees provision was directly connected to James's compliance "with the provisions of this order." We remand this matter to the trial court for further proceedings. On remand, we direct the court to readdress Theresa's request for an award of attorney fees.

¶ 25    This court is mindful of the concerns expressed by Theresa and the trial court that James made virtually no reasonable efforts to comply with the terms of the marital settlement agreement before Theresa filed her petition for a rule to show cause. If James had made an earlier effort to comply and been denied credit, he could have asked the trial court to modify the marital settlement agreement. Instead, he took no action except for his November 24, 2015, request to refinance the mortgage with First Financial Bank, N.A. However tardy James's compliance efforts may have been, his efforts provide evidence that the mandates of the purge provision were unachievable, and an unachievable purge provision is a nullity. *Bank of America, N.A.*, 2012 IL App (1st) 113178, ¶ 42.

¶ 26                                    III. CONCLUSION

¶ 27    For the foregoing reasons, we conclude that the Williamson County circuit court's contempt order must be vacated and the cause remanded for further proceedings consistent with this order.

¶ 28    Vacated; cause remanded with directions.